# THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# CIVIL CASE NO. 1:13-cv-00027-MR-DLH

| | |
|---|---|
| **JENNIFER D. JACKSON,** )<br>)<br>**Plaintiff,** )<br>)<br>vs. )<br>)<br>**CAROLYN W. COLVIN,** )<br>**Commissioner of Social Security** )<br>**Administration,** )<br>)<br>**Defendant.** )<br>_____ ) | **MEMORANDUM OF**<br>**DECISION AND ORDER** |

**THIS MATTER** is before the Court on the Plaintiff's Motion for Summary Judgment [Doc. 10], and the Defendant's Motion for Summary Judgment [Doc. 12].

## I.     PROCEDURAL HISTORY

The Plaintiff Jennifer D. Jackson filed an application for disability insurance benefits on September 17, 2008, [Transcript ("T.") 53, 55], alleging that she had become disabled as of September 12, 2008 [T. 29]. The Plaintiff's application was denied initially [T. 53] and on reconsideration [T. 55]. The Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") which occurred on October 15, 2010. [T. 25-26]. On April 1, 2011, the ALJ issued an unfavorable decision. [T. 9-19]. On November

28, 2012, the Appeals Council denied the Plaintiff's request for review, thereby making the ALJ's decision the final decision of the Commissioner. [T. 1-3]. The Plaintiff has exhausted all available administrative remedies, and this case is now ripe for review pursuant to 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

The Court's review of a final decision of the Commissioner is limited to (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 401 (1971), and (2) whether the Commissioner applied the correct legal standards, Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). The Court does not review a final decision of the Commissioner de novo. See Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986).

The Social Security Act provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). The Fourth Circuit has defined "substantial evidence" as "more than a scintilla and [doing] more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Perales, 402 U.S. at 401).

The Court may not re-weigh the evidence or substitute its own judgment for that of the Commissioner, even if it disagrees with the Commissioner's decision, so long as there is substantial evidence in the record to support the final decision below. See Hays, 907 F.2d at 1456; see also Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

### III. THE SEQUENTIAL EVALUATION PROCESS

In determining whether or not a claimant is disabled, the ALJ follows a five-step sequential process. 20 C.F.R. §§ 404.1520, 416.920. If the claimant's case fails at any step, the ALJ does not go any further and benefits are denied. See Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995).

First, if the claimant is engaged in substantial gainful activity, the application is denied regardless of the medical condition, age, education, or work experience of the applicant. 20 C.F.R. §§ 404.1520, 416.920. Second, the claimant must show a severe impairment. If the claimant does not show any impairment or combination thereof which significantly limits the claimant's physical or mental ability to perform work activities, then no severe impairment is shown and the claimant is not disabled. Id. Third, if the impairment meets or equals one of the listed impairments of Appendix 1, Subpart P, Regulation 4, the claimant is disabled regardless of age,

education, or work experience. Id. Fourth, if the impairment does not meet the criteria above but is still a severe impairment, then the ALJ reviews the claimant's residual functional capacity (RFC) and the physical and mental demands of work done in the past. If the claimant can still perform that work, then a finding of not disabled is mandated. Id. Fifth, if the claimant has a severe impairment but cannot perform past relevant work, then the ALJ will consider whether the applicant's residual functional capacity, age, education, and past work experience enable the performance of other work. If so, then the claimant is not disabled. Id.

## V. THE ALJ'S DECISION

On April 1, 2011, ALJ Sims issued a decision denying the Plaintiff's claim. [T. 9-19]. Proceeding to the sequential evaluation, the ALJ found that the Plaintiff's date last insured was December 31, 2012 and that she had not engaged in substantial gainful activity since September 12, 2008. [T. 11]. The ALJ then found that the medical evidence established the following severe impairments: chronic back pain with radiculopathy status post five surgeries. [Id.]. The ALJ determined that none of Plaintiff's impairments met or equaled a listing. [T. 12].

The ALJ then assessed the Plaintiff's residual functional capacity (RFC), finding that the Plaintiff had the ability to perform light work as

defined in 20 C.F.R. § 404.1567(b) except with a sit/stand option (sit for 30 minutes – stand as needed), occasional climbing, stooping, or crouching, and with occasional exposure to hazards. [T. 12]. The ALJ found that the Plaintiff was unable to perform any past relevant work. [T. 17]. Because the ALJ found that the Plaintiff had acquired work skills from past relevant work that were transferable to other occupations with jobs existing in significant numbers in the national economy, he ruled that the Plaintiff was not disabled. [T. 17-18].

## VI.   DISCUSSION[1]

The Plaintiff asserts the following assignments of error: (1) that the ALJ misconstrued the evidence in finding that the serious mental health problems suffered by the Plaintiff are non-severe, and (2) that the ALJ failed to properly evaluate the effect of the Plaintiff's disabling pain. [Doc. 11 at 5, 8].[2] The Court will address each of these assignments of error in turn.

### A.   The ALJ's Assignment of the Plaintiff's Mental Health

---

[1] Rather than set forth a separate summary of the facts in this case, the Court has incorporated the relevant facts into its legal analysis.

[2] The Plaintiff's counsel noted that "we will be asking the Court . . . to recognize that the fully favorable decision subsequently granted to the Plaintiff, is 'new and material evidence' that should be considered in this case." [Doc. 11 at 4]. The Plaintiff's counsel, however, has not filed a Motion to Receive New and Material Evidence. Thus, this Court will not consider any argument regarding such evidence.

5

The Plaintiff argues that the ALJ misconstrued the evidence in finding that the serious mental health problems suffered by the Plaintiff are non-severe. [Doc. 11 at 5]. The ALJ noted that "the claimant's medically determinable mental impairment of depression does not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and is therefore non[-]severe." [T. 11]. The Plaintiff specifically asserts that the ALJ disregarded the treatment notes of the Plaintiff's primary treating physician, Loretta Dickson, M.D. ("Dr. Dickson"). [Doc. 11 at 5]. The Plaintiff notes Dr. Dickson's findings of worsening depression and need for a medication change on November 23, 2009. [Id.]. The Plaintiff also references a clinician's September 15, 2009 diagnosis of depression due to a medical condition. [Doc. 11 at 6].

Notably, the Plaintiff has the burden of meeting the "requirement of a threshold showing of severity" of a "medically determinable impairment" in a Social Security case. Bowen v. Yuckert, 482 U.S. 137, 146 (1987) (citing 42 U.S.C. §§ 423(d)(1)(A), 423(d)(5)(A)). A severe impairment is one "which significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c).

The Court finds that the ALJ did not commit error by not giving controlling weight to Dr. Dickson's opinion. An ALJ must give controlling

weight to the opinion of a claimant's treating physician when the opinion concerns the nature and severity of an impairment, is well supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the case record. 20 C.F.R. § 404.1527(c)(2). Thus, an opinion of a treating physician is not entitled to controlling weight if it is unsupported by medically acceptable clinical and laboratory diagnostic techniques and/or inconsistent with other substantial evidence of record. Id.; see also Rogers v. Barnhart, 204 F. Supp. 2d 885, 893 (W.D.N.C. 2002) ("Even the opinion of a treating physician may be disregarded where it is inconsistent with clearly established, contemporaneous medical records").

Here, the ALJ properly indicated why he did not accord controlling weight to Dr. Dickson's opinion due to inconsistency with other substantial evidence in the Plaintiff's record, as he stated:

> [i]t is obvious from the record that Dr. Dickson's assessment was based on the claimant's own subjective complaints and it is probable that Dr. Dickson is completely unaware of the claimant's actual activity level. In light of the claimant's above-listed daily activities [performing cooking, housework, vacuuming, mopping, washing dishes, taking care of personal hygiene needs unassisted, going to the grocery store twice a week, watching two to three hours of television daily, driving almost daily taking her child to school, attending church occasionally, keeping in regular phone contact with

7

> a close friend], the undersigned has not accorded great weight to Dr. Dickson's December 2008 medical opinion.

[T. 16]. As noted previously, this Court will not re-weigh the evidence or substitute its own judgment for that of the Commissioner, even if it disagrees with the Commissioner's decision, so long as there is substantial evidence in the record to support the final decision below. See Hays, 907 F.2d at 1456; see also Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

The Plaintiff's counsel has cited generally to and attached the cases of Thomas v. Commissioner, 24 F. App'x 158 (4th Cir. 2001) and Money v. Astrue, 2011 U.S. Dist. LEXIS 96286 (M.D.N.C. Aug. 26, 2011), noting that ALJ Sims's failure to give controlling weight to Dr. Dickson's opinion was prejudicial to the Plaintiff because Dr. Dickson was the Plaintiff's treating physician. [Doc. 11 at 7]. The Plaintiff's counsel, however, has not included any arguments in his brief to inform the Court how such legal authority is relevant to this case. In fact, the Thomas case is entirely distinguishable from this case because the Appeals Council in Thomas did not make it clear whether or not they had considered additional evidence that was provided by the claimant's treating physician after the ALJ hearing, whereas the ALJ here made it clear why he assessed Dr.

Dickson's opinion as he did. See Thomas, 24 F. App'x at 159. The Money case also related to new relevant evidence arising after the initial decision in the case. See Money, 2011 U.S. Dist. LEXIS 96286 at * 1-2.

Thus, the Plaintiff's counsel has failed to provide any argument to indicate that the Commissioner's decision was not supported by substantial evidence or that the Commissioner applied incorrect legal standards. See Richardson, 402 U.S. at 401; see also Hays, 907 F.2d at 1456. This Court admonishes Attorney Clontz that such conclusory briefing in the absence of any argument is not acceptable. This Court now reiterates what it has stated previously:

> Counsel in this case is advised that he will suffer [sanctions] going forward if he continues to submit briefs with little to no legal authority or legal analysis. This Court will not tolerate the continued disruption to the Court's docket . . . [T]his Court has stricken several briefs and disregarded numerous arguments contained in the briefs filed by attorneys Clontz and Gudger for their continued failure to comply with the Orders of this Court. See e.g. Adams v. Astrue, No. 1:11cv336, 2013 WL 609859 (W.D.N.C. Jan. 28, 2013) (Howell, Mag. J.); Hardy v. Astrue, No. 1:11cv299, 2013 WL 66082 (W.D.N.C. Jan.4, 2013) (Howell, Mag. J.); C[h]andler [v. Astrue], 2012 WL 5336216. As the Court has previously stated, these filings disrupt the Court's docket, do a disservice to counsel's client, and waste the resources of the Court.

Stines v. Colvin, No. 1:12-CV-00121-MR-DLH, 2013 WL 4442032 at * 5 (W.D.N.C. Aug. 16, 2013).

Further, the Court finds that the ALJ gave proper consideration to the Plaintiff's other treating, non-treating, and non-examining source opinions. The Plaintiff's counsel has cited generally to 20 C.F.R. § 404.1527 and § 404.1527(e), Social Security Rulings 96-2p and 96-5p, and Bird v. Commissioner, 699 F.3d 337 (4th Cir. 2012). [Doc. 11 at 7]. The Plaintiff's counsel, however, has not included any arguments in his brief to inform the Court how such legal authority is relevant to this case. Notably, this Court has previously addressed Attorney Clontz regarding the application of the Bird case:

> In Bird, the Fourth Circuit addressed whether the ALJ erred in failing to consider medical evidence that was created after the date last insured and in failing to assign more weight to the disability determination of the Department of Veterans Affairs ("VA"). Id. Upon consideration of the medical evidence at issue, the Fourth Circuit held that the ALJ erred as a matter of law by failing to give retrospective consideration to medical evidence regarding the plaintiff's Post Traumatic Stress Disorder that was created after the date last insured, in part, because this evidence related to his symptoms and impairments prior to his date of last insured. Id. at 340-42. 'Thus, we conclude that the evidence in the record provided a sufficient linkage reflective of a possible earlier and progressive degeneration, requiring that the ALJ give retrospective consideration to the psychological

> evidence summarized in the VA rating decision and the Cole Report.' Id. at 342 (internal citation and quotation omitted).

McClellan v. Colvin, No. 1:12-CV-00255-MR-DLH, 2013 WL 5786839 at *4 (W.D.N.C. Oct. 28, 2013) (Reidinger, J.). The Bird case does not "describe the appropriate evaluation of mental health evidence" for all cases such as this one involving mental health issues, as the Plaintiff's counsel suggests. [Doc. 11 at 7].

Finally, for the same reasons discussed previously, this Court will not substitute its own judgment for that of the Commissioner where substantial evidence exists in the record to support the final decision. See Hays, 907 F.2d at 1456; see also Lester v. Schweiker, 683 F.2d at 841. The ALJ properly considered the functional areas for mental disorders in section 12.00C of the Listing of Impairments, in 20 C.F.R. § 404, Subpart P, Appendix 1: activities of daily living; social functioning; concentration; persistence or pace; and episodes of decompensation. [T. 11-17]. Thus, the Plaintiff's first assignment of error in this case is without merit.

## B. The ALJ's Evaluation of the Plaintiff's Pain

The Plaintiff next argues that the ALJ failed to properly evaluate the effect of the Plaintiff's disabling pain. [Doc. 11 at 8]. The Plaintiff particularly argues that the ALJ failed to consider the Plaintiff's five back

surgeries and accompanying objective symptoms, the Plaintiff's testimony regarding her chronic pain, and the evaluation at Duke Medical Center in which Oren N. Gottfried, M.D. ("Dr. Gottfried") recommended a nerve root injection and indicated that the Plaintiff "may also be a candidate for a nerve stimulator." [Doc. 11 at 8-10; T. 705].

An ALJ must evaluate every medical opinion received in the record, regardless of its source. 20 C.F.R. § 404.1527(c). A "medical opinion" is a "judgment [ ] about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). In evaluating the weight of a medical source, the ALJ must consider certain factors including: the examining relationship, the length of the treatment relationship, the frequency of examination, the nature and extent of the treatment relationship, the supportability of the medical source, the consistency of the medical source, the specialization of the provider, and any other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c)(1–6).

Further, in the Fourth Circuit, a two-step process is used to analyze subjective allegations. See Hines v. Barnhart, 453 F.3d 559, 564 (4th Cir.

12

2006); Craig, 76 F.3d at 594-95; 20 C.F.R. § 404.1529(b) and (c). First, the ALJ must determine whether a medical impairment is present which can reasonably be expected to cause the symptoms alleged. See Craig, 76 F.3d at 594-95; 20 C.F.R. § 404.1529(b). If this question is answered affirmatively, the ALJ then must evaluate the intensity and persistence of the symptoms. See Craig, 76 F.3d at 594-95; 20 C.F.R. § 404.1529(c). Factors relevant to this determination include the claimant's daily activities; the claimant's statements regarding the location, duration, and frequency of the symptoms; precipitating and aggravating factors; and the effectiveness of medicine and other treatment. See Craig, 76 F.3d at 594-95; 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii). Moreover, although a claimant's allegations cannot be disregarded at step two because of a lack of objective evidence, an ALJ may still take the objective medical evidence into consideration and is free to reject the allegations to the extent they are inconsistent with the available evidence, including the objective medical evidence. See Hines, 453 F.3d at 565 n.3; 20 C.F.R. § 404.1529(c)(2).

Here, the ALJ properly assessed the Plaintiff's medical record evidence. "After careful consideration of the entire record, . . . [reviewing] all symptoms and the extent to which these symptoms can reasonably be

accepted as consistent with the objective medical evidence and other evidence," [T. 12], the ALJ found:

> the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms . . . [but] the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment. In summary, the medical records show that the claimant has undergone numerous back surgeries over the years. However, multiple x-rays, MRIs and a myelogram showed that since the claimant's alleged onset date of September 12, 2008 there has been no indication for further surgery. The claimant's specialists agree that they are not able to identify a source of the claimant's alleged symptoms and that the films have shown a solid arthrodesis and did not show any severe stenosis. Examinations have shown abnormal range of motion of the thoracolumbar spine and bilateral shoulders; however, this would be the norm for an individual who had undergone a fusion. . . . [Dr. Grimay opined] that the claimant's limitations were moderate. He added that the claimant could walk 100 feet without difficulty (Exhibit 12 F). At another consultative examination in September 2009, it was observed that the claimant never squirmed or fidgeted while seated and did not have any difficulty standing from a seated position. Further, she climbed and descended a long flight of stairs slowly but unassisted . . . None of the claimant's orthopedist specialists have stated that the claimant was disabled due to her alleged chronic back pain.

[T. 16]. Thus, the ALJ properly considered the Plaintiff's medical record evidence and physical limitations related to her pain.

Additionally, the ALJ properly assessed the Plaintiff's subjective complaints of pain from both the Plaintiff's testimony and from her medical record evidence. He noted:

> although the claimant testified at the hearing that she basically does "nothing" during the day, her claimant's allegations of disability are rebutted by her reports of daily living activities to her treating and consultative physicians. Even though the claimant alleges that she suffers from chronic, debilitating pain in her back and both legs, she reported to the consultative physician in December 2008 that she performed the cooking, housework, vacuuming, mopping, and washing dishes, but that her children helped her. In September 2009, she reported to the consultative psychologist that she takes care of all of her personal hygiene needs unassisted, goes to the grocery store on a biweekly basis, drove on an almost daily basis usually taking her 15-year-old child to school. She stated that over the previous month, she had washed dishes, dusted, cooked, and made her bed. She estimated that she watched two to three hours of television daily, attends church occasionally and has a close friend with whom she keeps in regular phone contact. The claimant's ability to engage in the above-described daily living activities supports a finding that her impairments are not as disabling as she now alleges.

[T. 16]. Further, the ALJ specifically referenced the Plaintiff's evaluation at Duke University Medical Center in 2010, and distinguished that even though she rated her pain as a "10" at that time, "Dr. Gottfried noted that he

15

did not see a clear etiology of her films to describe her symptoms." [T. 16, 702].

The Plaintiff's counsel has also referenced part of the analysis in Metcalf v. Astrue, No. 1:08-cv-474, 2010 U.S. Dist. LEXIS 141791 (W.D.N.C. 2010), [Doc. 11 at 9], but has not argued how Metcalf applies to this present case. As discussed previously, this Court will only consider the arguments that have been briefed in this case, and conclusory arguments without any support are unacceptable.

Thus, the ALJ's findings regarding the Plaintiff's pain were properly supported by a discussion of the objective evidence, treatment notes and medication, the opinions of the non-examining state agency physicians, and the Plaintiff's daily activities. It is not the task of this Court to parse the Plaintiff's record to substitute its judgment for the ALJ's judgment.

Thus, the Plaintiff's second assignment of error is likewise without merit.

## O R D E R

Accordingly, **IT IS ORDERED** that the Plaintiff's Motion for Summary Judgment [Doc. 10] is **DENIED**; the Defendant's Motion for Summary Judgment [Doc. 12] is **GRANTED**; the decision of the Commissioner is **AFFIRMED**; and this case is **DISMISSED**.

A judgment shall be entered simultaneously herewith.

**IT IS SO ORDERED.**

Signed: September 9, 2014

Martin Reidinger
United States District Judge